UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| MICHAEL W. TOMLIN & MARILYN B. TOMLIN, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 5: 22-200-DCR |
| V. | ) ) | |
| CITY OF EUBANK & BOBBY DAWS, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiffs Michael and Marylin Tomlin (jointly, the "Tomlins") filed this action seeking records pertaining to an ongoing dispute with their neighbor, Edith Wilson.  The Tomlins contend that Defendants City of Eubank[1] and Bobby Daws' denial of their records requests violated their rights under federal and state law.  The defendants have moved for summary judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure and the plaintiffs have moved for partial summary judgment.  [Record Nos. 22, 24]

The parties' competing motions were referred to United States Magistrate Judge Matthew A. Stinnett for issuance of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  Magistrate Judge Stinnett issued his report on April 17, 2023, recommending that the defendants' motion be granted, and that the plaintiffs' motion be denied.  [Record No. 28] The parties did not submit any objections to the Magistrate Judge's Report &

---

[1] The plaintiffs' Complaint incorrectly spells Eubank as "Eubanks."  [*See* Record No. 1, p. 1.] The Court will use the proper spelling in this opinion and corresponding judgment.

Recommendation.[2] Despite the absence of objections, the Court has conducted a *de novo* review of the parties' cross-motions for summary judgment and agrees with Magistrate Judge Stinnett's determination that the plaintiffs have not raised a genuine issue of material fact indicating that the defendants' conduct amounted to a violation of the federal or Kentucky constitutions, or of Kentucky law.   Accordingly, the defendants are entitled to summary judgment on all claims.

## I.

Wilson purchased two adjacent tracts of land on 76 Alley Street, in Kings Mountain, Kentucky in 1993.  [Record No. 24-1, p. 5]  The City of Eubank set a water meter to service Wilson's property, and Wilson ran a water line from the meter to her mobile home on the tract where she currently resides ("Tract Two").   [Record Nos. 24, p. 1, 24-4, p. 4] Wilson eventually extended the water to the other tract of land ("Tract One").  [*Id.* at p. 3]  She paid a single water bill because only one water meter serviced both tracts.  [Record No. 24-1]

Wilson sold Tract One to Virginia Marlene Farmer in 2013, and Farmer agreed to pay Wilson for her portion of the water bill.  [Record No. 24-1, p. 8] However, the water line from Tract One was disconnected after Farmer vacated the home three years later.

Farmer sold Tract One to the Tomlins in 2019.  [Record No. 24-1, p. 11]  The Tomlins expected that they could reconnect the water line extension from Tract Two to their property, but Wilson maintained that "there was no longer water service to the house on Tract One" and

---

[2] The Court makes a *de novo* determination of those portions of a magistrate judge's recommendation to which objections are made, 28 U.S.C. § 636(b)(1)(C).  However, "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

that the Tomlins needed to install a separate meter to service their home.  [Record Nos. 22, p. 2, 24-4, p. 3]  The Tomlins sued Wilson in Lincoln Circuit Court to establish their right to connect to the water line after the parties' dispute reached an impasse.  [Record No. 24, p. 4]  Their state court proceeding remains pending.

Shortly after initiating the lawsuit in state court, the Tomlins had a subpoena for the City of Eubank in which they sought to obtain public records of "water permits and applications for service, repair orders and any other document" related to water service at Wilson's address from 1990 to 2004.  [Record No. 24-9]  The Tomlins contend that records of Wilson's address are relevant to their dispute because Daws, the custodian of records for the city, altered Wilson's service address from "76 Alley Street, Kings Mountain, KY" to "76 Alley St. Tract II" to suggest that only Tract II was serviced by the water meter.  [Record No. 1, pp. 10-11]  They claim Daws changed the listed address out of his bias toward Wilson, and so that Wilson could "insert [the] illegally created evidence" in state court.  [Record Nos. 1, p. 11, 22, p. 2]

The city denied the Tomlins' request for records.  And more specifically, Daws explained that he was not authorized to provide records containing "specific customer billing information" under the Kentucky Open Records Act ("KORA").  [Record No. 23-3, p. 6]  *See* KRS § 61.878(1)(a).  Daws further noted that "it was impossible to produce" much of the information requested by the Tomlins because the older records were destroyed according to the City's record retention policy.  [Record Nos. 24, p. 5, 24-10]  The Tomlins filed a second records request after the City declined to provide the records listed in their subpoena, but the second request also was denied.  [Record Nos. 24-9, 24-10]

The Tomlins filed this action in response to the City's refusal to provide their requested documents.  [Record No. 1] They assert that the defendants unlawfully altered Wilson's address on public records and withheld public records, violating their rights under the United States' Constitution, the Kentucky Constitution, and the KORA.  Specifically, they make claims alleging violations of the Equal Protection Clause of the Fourteenth Amendment to the Constitution (Count 1); the right to Petition the Government for a Redress of Grievances under the First Amendment to the Constitution (Count 2); Section 1 of the Kentucky Constitution (Counts 3 and 4); the KORA (Count 5); and the Kentucky Archives and Records Act ("KARA") (Count 6).

Magistrate Judge Stinnett recommends granting the defendants' motion for summary judgment on all claims.  [Record No. 28]  He concludes that the Tomlins failed to state an equal protection claim under the Fourteenth Amendment because they did not allege that they are a member of a suspect class or that the defendants' actions were not rationally related to a legitimate state interest.  [*Id.* at p. 5]  He notes that the plaintiffs' First Amendment claim fails as a matter of law because they did not allege that the defendants failed to meet with them or consider their records requests.  [*Id.* at p. 6] The Magistrate Judge concludes that the defendants are entitled to summary judgment on Counts 3 and 4 because no private right of action exists for violations of the Kentucky Constitution.  [*Id.* at p. 7] And Count 5 fails because the Tomlins did not appeal the City's denial of their requests to either the Kentucky Attorney General or to their circuit court, as KORA requires.  [*Id.* at pp. 8-9]  Finally, Magistrate Judge Stinnett indicates that the defendants are entitled to summary judgment on the Tomlins' KARA claim because they did not seek redress with the Kentucky Department for Libraries and Archives prior to filing this action.  [*Id.* at p. 10]

- 4 -

## II.

Summary judgment is appropriate if there is no genuine dispute with respect to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, the Court must view all facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). The moving party has the initial burden to show that there is no genuine issue of material fact, but once the moving party has met its burden, the nonmoving party must demonstrate that there is sufficient evidence from which the finder of fact could render a verdict in its favor. *See Celotex Corp.*, 477 U.S. 317, 324 (1986).

Additionally, in reviewing cross-motions for summary judgment, the Court must "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (citation omitted).

## III.

### 1. 42 U.S.C. § 1983—Equal Protection

To establish liability under 42 U.S.C. § 1983, a plaintiff must show deprivation of a right secured by the Constitution or laws of the United States and that the deprivation was caused by a person acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970); *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010). To assert a viable claim under the equal protection clause of the Fourteenth Amendment, a plaintiff must "prove that a state actor purposefully discriminated against him because of his membership in a protected class." *Simpson v. Ameji*, 57 F. App'x 238, 239 (6th Cir. 2003) (citation omitted).

Next, a plaintiff who does not claim membership in any class must establish that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

In the present case, the Tomlins argue that the defendants' actions deprived them of the equal protection of the laws under the Fourteenth Amendment when they "actively sid[ed] with one neighbor and destroy[ed]/tamper[ed] with evidence to assist the disputing neighbor (Ethel Wilson)." [*Id.*] But as Magistrate Judge Stinnett concludes, the Tomlins' claim is subject to rational basis review because they did not allege that the defendants discriminated against them due to their membership in a suspect class. [Record No. 28, p. 5] *See Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) ("[A]ll 'class-of-one' claims are subject to rational basis review."). Because they did not allege, much less establish, that the defendants' actions bore no "rational relation to [a] legitimate state interest," their claim fails as a matter of law. *Craigmiles v. Giles*, 312 F.3d 220, 223 (6th Cir. 2002).

## 2. 42 U.S.C. § 1983—Redress of Grievances

The Tomlins next assert that, by refusing their records request, the defendants deprived them of a right to "petition the government for a redress of grievances" guaranteed by the First Amendment to the Constitution. [Record No. 1, p. 13] "The right to petition is cut from the same cloth as the other guarantees of [the First] Amendment and is an assurance of a particular freedom of expression." *McDonald v. Smith*, 472 U.S. 479, 482 (1985). While the Sixth Circuit recognizes that the First Amendment establishes the right to seek redress from the government, that right "does not guarantee a response to the petition or the [include the] right

to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).

The Magistrate Judge correctly concludes that the plaintiffs have failed to state a viable claim under the First Amendment's right to petition clause. [Record No. 28, p. 6]  The Tomlins do not contend that they were prevented from filing their records requests, or even that the defendants refused to answer their requests.  Instead, they merely argue that their right to petition was violated because the defendants' response to their requests was not what they had expected to receive.  And such is wholly without merit for purposes of establishing liability under 1983.

### 3.  Kentucky Constitution § 1—Redress of Grievances, Right to Acquire Property

The plaintiffs also claim that the defendants' conduct violated their rights under Section 1 of the Kentucky Constitution.  [Record No. 1, pp. 13-15]  In Count 3, they assert that the defendants' denial of their records requests deprived them of a right to petition the government. [*Id.* at pp. 13-14]  Next, the Tomlins contend in Count 4 that Daws violated their state constitutional right to "acquir[e] and protect[] property" by unlawfully changed public records of Wilson's service address.  [*Id.* at pp. 14-15]

The Tomlins' third and fourth claims fail because they have not identified a cause of action as a vehicle for such claims.  "Kentucky state law does not recognize a private cause of action for violations of the Kentucky Constitution." *Combs v. Breathitt Cnty. Fiscal Ct.*, No. 5:16-CV-464-JMH, 2017 WL 4287545, at *3 (E.D. Ky. Sept. 27, 2017).  Regarding the merits of their allegations, the plaintiffs have not established that, by denying their records requests, the defendants deprived them of their right to petition, as explained with respect to Count 2.

And they have failed to show how Daws' purported change to Wilson's address in water service records amounts to a violation of a right to acquire and protect property.

### 4. Kentucky Open Records Act

KRS § 61.872(1) provides that any Kentucky resident has "the right to inspect public records," subject to certain exceptions. A party who is denied access to public records can appeal the denial of his request to the Attorney General or to the local Circuit Court for further review. *See* KRS §§ 61.880, 61.882. Another judge of this Court has held that a party's failure to exhaust appellate rights under KORA warrants dismissal of a corresponding § 1983 claim. *See Bonds v. Daley*, No., 2: 17-CV-8-DLB, 2018 WL 2405903, at *10 (E.D. Ky. Feb. 21, 2018).

The Tomlins allege that the defendants' denial of their records requests violated KORA. [Record No. 1, pp. 16-17] However, as Magistrate Judge Stinnett notes, they did not appeal the records denial to the Attorney General or to the Circuit Court as required under KORA. Thus, regardless of the merits of thsi claim, their failure to "perfect any appellate rights" under the statute warrants granting summary judgment to the defendants. [Record No. 28, p. 8]

### 5. Kentucky Archives and Records Act

Finally, the Tomlins argue that the defendants' conduct violated their rights under KARA, which requires that public agencies employ an effective system for managing and retaining public records. [Record No. 1, pp. 17-19 (citing KRS § 171.140)] They first assert that Daws failed to comply with KARA when he altered records of Wilson's service address from "76 Alley St." to "76 Alley Street Tract II." Next, they contend that Daws' actions violate

KRS § 519.060, which prohibits "knowingly mak[ing] a false entry in or falsely alter[ing] any public record." [*Id.* at p. 19]

Daws admits that he changed the record of Wilson's address to reflect that her water meter serviced only Tract Two. [Record No. 23-3, p. 4] However, the Tomlins have not provided any evidence establishing that, by changing the address, Daws engaged in poor records management under KARA. Moreover, the plaintiffs have not demonstrated that, by adding "Tract II" to the address (which, if anything, more accurately reflects the portion of the property that is serviced by the water meter), Daws falsely altered a public record under § KRS 519.060.

The Tomlins also contend that the defendants' "premature" destruction of the records they requested violates KARA. In making this assertion, they do not appear to dispute that the defendants acted pursuant to the City's record retention policy. Instead, they claim that the policy permits unlawful destruction of records in violation of the statute. [Record No. 1, pp. 17-18] But like the claim under KORA, the Tomlins' challenge to the City's record retention policy fails on procedural grounds. The Kentucky Attorney General, "recognizing an essential relationship under [KORA] . . . and records management under [KARA] . . . has regularly referred open records decisions involving potential records mismanagement to [the Kentucky Department for Libraries and Archives ("KDLA")]." Ky. Op. Atty. Gen. 14-ORD-111, 2014 WL 2514629, at *1 (2014) (citing KRS §§ 61, 171). And as the Magistrate Judge correctly notes, the plaintiffs' claim that the City's record retention policy does not adequately protect the public's right to access records should be referred to the KDLA for initial review before challenging the policy here. [Record No. 28, p. 10] Because the Tomlins failed to exhaust

administrative remedies with respect to their claim, the defendants' motion for summary judgment as to Count 6 will be granted.

### IV.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.     The United States Magistrate Judge Matthew A. Stinnett's Report and Recommendation [Record No. 28] is **ADOPTED** and **INCORPORATED** here by reference.

2.     Defendants City of Eubank and Bobby Daws' motion for summary judgment [Record No. 24] is **GRANTED**.

3.     Plaintiffs Michael Tomlin and Marilyn Tomlin's motion for partial summary judgment [Record No. 22] is **DENIED**.  Their claims are **DISMISSED**, with prejudice, and this matter will be **STRICKEN** from the docket.

Dated: May 11, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky